J-S24025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN ROBERT CAMPAS, | |
| Appellant | No. 555 MDA 2015 |

Appeal from the Order Entered February 20, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0001107-2009

BEFORE:  GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 03, 2016**

John Robert Campas appeals from the February 20, 2015 order denying PCRA relief.  We affirm.

On February 10, 2010, a jury convicted Appellant of involuntary deviate sexual intercourse of a child, aggravated indecent assault of a child, corruption of a minor, endangering the welfare of a child, indecent assault, and indecent assault of a person less than thirteen years of age.  The facts underlying the convictions were summarized by this Court on direct appeal:

> The charges against Appellant arose out of his sexual molestation of five-year-old A.C. over a one-to-two-year period. In addition to testimony from the victim, who was seven years of age at the time of trial, the jury heard from the victim's mother, babysitter, twelve-year-old brother, the investigating police officer, and a medical expert specializing in the field of child abuse and neglect.  Appellant advised the court that he intended to present his pastor as a character witness.  The Commonwealth, based on that proffer, advised that it intended

to cross-examine that witness regarding his knowledge of two Protection from Abuse ("PFA") orders involving Appellant. Following argument, the trial court ruled that evidence of Appellant's criminal contempt conviction based on his violation of one of the PFA orders was admissible for this purpose. After the determination was announced, counsel for Appellant advised the court that Appellant would not be offering the character witness nor testifying on his own behalf, and the defense rested without presenting any evidence. N.T. Suppression Hearing/Jury Trial, 2/11/10, at 186. The jury returned a guilty verdict on the aforementioned offenses, but acquitted Appellant of rape of a child and unlawful sexual contact with a minor.

*Commonwealth v. Campas*, 60 A.3d 586 (Pa.Super. 2012) (unpublished memorandum). Following a Megan's Law hearing, Appellant was determined to be a sexually violent predator ("SVP"), and sentenced on February 23, 2011, to seventeen to thirty-four years incarceration.

Appellant filed a timely appeal to this Court. He challenged his SVP determination and the propriety of the trial court's ruling that the Commonwealth could introduce a prior Protection from Abuse Order ("PFA") in cross-examining his character witnesses and against him if he chose to testify on his own behalf. We affirmed, finding the Commonwealth satisfied its burden of proving that he was an SVP by clear and convincing evidence, and that the trial court was correct that the PFA that resulted in the contempt conviction could be used in cross-examining Pastor Murray, Appellant's character witness. *Id*. at 184-185. We noted further that the court's ruling was limited solely to the use of the PFA contempt conviction in

the cross-examination of Appellant's proffered character witness, not Appellant.

Thereafter, Appellant filed a timely *pro se* PCRA petition and counsel was appointed. A supplemental counseled petition was filed. All claims sounded in ineffective assistance of counsel. After an evidentiary hearing on February 2, 2015, PCRA relief was denied. Appellant timely appealed and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents three issues for our review:

> I. Whether trial counsel was ineffective in failing to call Pastor John Murray as a fact witness.
>
> II. Whether trial counsel was ineffective in advising the Defendant not to testify based upon counsel's opinion that the Commonwealth could use evidence of prior bad acts.
>
> III. Whether trial counsel was ineffective in failing to appeal the trial court's denial of the objection to Kyle Naperkowski's testimony that the Appellant had "hit my mother a lot."

Appellant's brief at 1.

In reviewing the grant or denial of PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). This review is limited to the evidence of record and the factual findings of the PCRA court. ***Id***. We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no

support in the record." *Id*. As long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. *Id*. Nonetheless, where the issue pertains to a question of law, "our standard of review is de novo and our scope of review is plenary." *Id*.

All of Appellant's claims involve ineffective assistance of counsel. In order to obtain PCRA relief based on counsel ineffectiveness, a petitioner must establish each of the following: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011).

A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005). That issue is a legal determination. *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005). In determining whether counsel had a reasonable basis for the course chosen, the test is whether no competent counsel would have chosen that action or inaction, or, whether the alternative, not chosen, offered a significantly greater potential chance of success. *Commonwealth v. Colavita*, 993 A.2d 874 (Pa. 2010). We do not employ a hindsight approach in comparing trial counsel's actions with other efforts he may have taken. *Commonwealth v. Miller*, 987 A.2d 638 (Pa. 2009). "Prejudice is established if there is a reasonable probability that,

but for counsel's errors, the result of the proceeding would have been different." ***Commonwealth v. Steele***, 961 A.2d 786, 797 (Pa. 2008).

Appellant alleges first that trial counsel was ineffective in failing to call Pastor John Murray as a fact witness. He contends that his testimony would have been invaluable to his defense by challenging the credibility of Jackie Naperkowski, the mother of the young victim. In support of his contention, he appended to his PCRA petition a statement from Pastor Murray setting forth the substance of his proffered testimony and his willingness to testify under oath to the circumstances surrounding trial counsel's refusal to permit him to testify.

We note preliminarily that Pastor Murray did not appear at the evidentiary hearing. Appellant testified that Pastor Murray received a telephone call from Ms. Naperkowski, Appellant's on-again-off-again girlfriend, offering to set up Appellant so that he would lose his job as a caretaker at the pastor's church.[1] N.T. PCRA Hearing, 2/2/15, at 10.

---

[1] The nature of Ms. Naperkowski's purported scheme is unclear from Appellant's testimony at the evidentiary hearing. However, a letter authored by Pastor Murray, setting forth the nature of the testimony he would have provided if he had been called as a fact witness, was appended to Appellant's PCRA petition. Therein, Pastor Murray explained that a single employee like Appellant was not permitted to have a young woman stay with him at the caretaker's house. Out of spite and revenge because Appellant terminated their relationship, Ms. Naperkowski contacted the Pastor and proposed that she go and stay with Appellant and that the Pastor catch them and fire Appellant for violating church rules.

Appellant stated that he communicated this information to his attorney, Demetrius Fannick. According to Appellant, even after the court ruled that evidence of his prior PFA was admissible if Pastor Murray offered character testimony, Appellant advised his counsel that he wanted the Pastor to testify. Appellant could not recall, however, if there was a discussion at that time about the Pastor's value as a fact witness. *Id*. at 13.

The Commonwealth counters that Appellant failed to demonstrate that trial counsel had no reasonable basis for his decision not to call Pastor Murray as a fact witness. That alone, it contends, is fatal to his claim as it was Appellant's burden to overcome the presumption of effectiveness. Moreover, trial counsel Demetrius Fannick, Esquire, testified at the evidentiary hearing that, "Pastor Murray was prepped as a character witness." *Id*. at 24. Counsel maintained that he was unaware that Pastor Murray could offer factual testimony that would tend to undermine the credibility of the victim's mother.[2]

---

[2] The record provides support for trial counsel's position that he was unaware that Pastor Murray could offer testimony as a fact witness. Defense counsel identified Pastor John Murray solely as a character witness and proffered that the Pastor would testify as to how he knew Appellant and Appellant's reputation within the church community. Counsel stated that he would ask the witness "whether or not he knows the [Appellant's] reputation within the community for being non-violent, peaceable character and a disposition to serve order," and that he would testify that he knew that reputation and that it was good. N.T. Suppression Hearing/Jury Trial, 2/11/10, at 177-178. The Commonwealth advised the court, based on that
*(Footnote Continued Next Page)*

- 6 -

The PCRA court proceeded to the third element of the ineffectiveness test first and concluded that Appellant "at the very least," had failed to satisfy the prejudice prong of the ineffectiveness test. ***See Commonwealth v. Albrecht***, 720 A.2d 693 (Pa. 1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.").  The court rejected the notion that if such testimony had been offered, the result would have been any different.  It noted that the victim first reported the abuse to her babysitter, Ms. Billy Kay Johnson, not to Ms. Naperkowski.  Thus, the court observed that Appellant's contention that Ms. Naperkowski was trying to entrap him lost its impact "given that the allegation of sexual abuse did not originate with her."  PCRA Court Opinion, 9/24/15, at 6.  The court added that the jury credited the testimony of the victim and her brother, who witnessed the abuse, and concluded that the Pastor's testimony about the mother would not have altered the result of the trial.

At the PCRA hearing, Appellant could not remember whether, after the court ruled that evidence of his prior PFA would be admissible if Pastor

*(Footnote Continued)* ───────────────

proffer, that it intended to cross-examine Pastor Murray regarding his knowledge of Appellant's two PFA's, one of which was then in effect.  ***Id***.

Murray testified as a character witness, he had any discussion with counsel about eliciting fact testimony from the Pastor. N.T. PCRA Hearing, 2/2/15, at 13. It was a "two to three minute conversation" with counsel and admittedly, "the concern was more my character as opposed to facts at that point." *Id*. Appellant contends that Pastor Murray's testimony regarding Jackie Naperkowski would have been invaluable in challenging her credibility, but fails to fully develop and explain how that testimony would have changed the outcome of the case. On that basis alone, this claim fails. Furthermore, as the PCRA court noted, the victim first disclosed the abuse to her babysitter, not to her mother, which tended to undermine Appellant's contention that Ms. Naperkowski orchestrated false allegations of abuse to implicate Appellant in criminal activity. Finally, we agree with the PCRA court that the testimony of the minor victim and her brother was compelling. We have no basis to disturb the PCRA court's finding that the Pastor's testimony would not have changed the outcome of the case.

Next, Appellant complains that counsel was ineffective in advising him not to testify on his own behalf at trial. Appellant stated at the evidentiary hearing that he wanted to testify "right from the start," but changed his mind based upon counsel's erroneous representation that the Commonwealth could then use his prior PFA against him. N.T. PCRA Hearing, 2/2/15, at 15.

The Commonwealth counters that, assuming that the issue has arguable merit, Appellant offered no evidence that Attorney Fannick's advice and strategy were unreasonable. Attorney Fannick explained that he advised Appellant not to testify for fear that he would make a representation during his testimony that would permit the Commonwealth to introduce the PFA. *Id*. at 34. The following testimony was elicited from trial counsel Fannick:

> **Q.** And did you advise the Defendant that if he took the stand, that there was a possibility that he could open the door for the Commonwealth to introduce into evidence one or both of the PFAs that were against him?
>
> **A. Absolutely. That was my main concern. John wanted to – and I don't blame him – John wanted to tell the jury what a good guy he was and that he didn't do this. That he never hurt anybody. He never did this. That he was a good guy. And I was certainly afraid and I thought, and that's why I advised him as I did, I thought that if he did testify, that he certainly would blurt something out; or in response on cross-examination say something that would open the door to those issues being brought up.**

N.T. PCRA Hearing, 2/2/15, at 26 (emphasis original).

To find counsel ineffective based on advice that the defendant not take the stand, a petitioner "must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." ***Commonwealth v. Uderra***, 706 A.2d 334, 340 (Pa. 1998). The PCRA court concluded that counsel's fear that Appellant's testimony may have

opened the door to evidence that would not otherwise have been admissible was not unfounded. PCRA Court Opinion, 9/24/15, at 8 (citing 42 Pa.C.S. § 5918; **Commonwealth v. Ragan**, 645 A.2d 811 (Pa. 1994) (citing 3A Wigmore, Evidence, § 1042 (a witness may be impeached by showing that, on a prior occasion, he or she engaged in conduct inconsistent with testimony given at trial)); **Commonwealth v. Charleston**, 16 A.3d 505 (Pa.Super. 2011), *abrogated on other grounds by **In the Interest of L.J.**,* 79 A.3d 1073 (Pa. 2013). It found that counsel had a reasonable basis for advising Appellant that testifying would not be in his best interest.

The record at trial reveals the following. Initially, Appellant had informed the court that he intended to testify. Outside the presence of the jury, the court decided to conduct a short colloquy of Appellant, "making sure that he understands he doesn't have to testify." N.T. Suppression/Trial, 2/11/10, at 181-182. Appellant was sworn and the court advised him that it "just wanted to inquire of you at this time and make sure that you understand that you have no obligation to testify in this matter." **Id**. at 182. After being apprised that he had the right to remain silent, that it was his decision alone whether to testify, and that he had an opportunity to discuss this with his attorney, Appellant advised the court that it was still his desire to testify as a witness. **Id**. at 182-183. Counsel then asked the court for five minutes to talk to Appellant "in light of the ruling that we made on the character evidence." **Id**.

After a brief moment off the record, the court informed the parties that it wanted to revisit the subject of the two PFA orders with regard to the proffer of Pastor Murray's character evidence. The court modified its earlier ruling and stated that the Commonwealth could use the PFA that was violated and resulted in a contempt conviction, but not the second PFA where there was no admission of wrongdoing. At that time, Attorney Fannick represented to the court that the defense would not call Pastor Murray as a character witness and Appellant would not testify. *Id*. at 185-86. The court again inquired of Appellant whether he was making that decision of his own free will or whether anyone was forcing or threatening him. Appellant alluded to the fact that his prior decision to testify was based upon a "lack of knowledge." *Id*. at 187. The Commonwealth's attorney interjected and advised Appellant that if he had any questions for the court or his attorney, that he ask them before making his decision. Appellant clarified, "No. It was by lack of knowledge by the simple fact of not understanding that a PFA can be used against me in a matter like this." *Id*. at 188. He then confirmed that he had discussed the possibility of this type of evidence being used with his attorney. *Id*. at 189.

We agree with the PCRA court that trial counsel had a reasonable basis for advising his client not to testify. Although generally 42 Pa.C.S. § 5918 precludes the examination of a defendant regarding convictions for other offenses or conduct tending to show bad character, that prohibition does not

apply if the defendant, through counsel, has questioned prosecution witnesses "with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation." 42 Pa.C.S. § 5918(1). Counsel testified that he was afraid that Appellant wanted to represent that he was a non-violent, good person and thus would open the door to the Commonwealth's use of the PFA. Counsel had a strategy for advising Appellant not to testify. Appellant offered no evidence that the strategy was unreasonable, and offers no support for that position herein. No relief is due on this claim.

Appellant levels his last charge of ineffectiveness at counsel's failure to appeal the trial court's denial of a mistrial after Kyle Naperkowski explained that he was too afraid to immediately report that he had seen Appellant abusing his sister because Appellant "used to hit his mother a lot." N.T. Suppression/Trial, 2/11/10, at 166. Trial counsel asked for a sidebar and moved for a mistrial after this testimony. The court ruled that the testimony was relevant to explain why the child was too scared to report the abuse at the time, which was an issue created by defendant's cross-examination, and denied the mistrial.

We note that, in response to an earlier defense inquiry as to why he did not report the abuse he had witnessed, Kyle responded that he was "scared, 'cuz he [Appellant] has a gun and he shot his puppy in the head." N.T. Suppression/Trial, 2/11/10, at 163. There was no motion to strike that

testimony. The defense thereafter merely attempted to undermine the notion that Kyle was too scared to report the abuse by eliciting testimony that Kyle had stayed home alone with Appellant on many occasions. On redirect examination, the Commonwealth asked Kyle why he was afraid and whether Appellant had threatened him. Kyle denied that he was threatened but stated that he was frightened of Appellant because Appellant used to hit his mother.

The response in question was properly allowed as Appellant opened the door to the evidence by attempting to undermine that the boy was afraid of Appellant. Appellant does not offer any legal argument in support of his contention that he would likely have prevailed on a claim on direct appeal that the trial court should have granted a mistrial based on Kyle's response. The statement was relevant to Kyle's failure to immediately report what he saw, which was an issue created by Appellant's cross-examination. Thus, this claim lacks arguable merit.

Nor would a showing of arguable merit be enough. As our High Court explained in *Commonwealth v. Jones*, 815 A.2d 598, 613 (Pa. 2002), "even identifying an issue of 'arguable' merit does not prove that appellate counsel acted unreasonably, or that prejudice ensued." [A]ppellate counsel is not constitutionally obliged to raise every conceivable claim for relief. Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional

judgment, offered a greater prospect of securing relief." ***Jones v. Barnes***, 463 U.S. 745, 750-754 (1983).

We find that Appellant has failed to establish that his claim had arguable merit and that counsel had no reasonable basis for choosing not to pursue this avenue on appeal. No relief is due.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2016